T.C. Memo. 2004-142

UNITED STATES TAX COURT

ROY J. CHASE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17313-02.              Filed June 17, 2004.

Roy J. Chase, pro se.

<u>Willie Fortenberry</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined deficiencies, additions
to tax, and penalties with respect to petitioner's Federal income
tax as follows:

| Year | Deficiency | 6654 | 6653(b)(1)(A) | 6653(b)(1)(B) | 6651(f) |
|------|-----------|------|---------------|---------------|---------|
| | | | Additions to Tax, I.R.C., Sections | | |
| 1987 | $14,635 | $785.65 | $10,976.25 | * | -- |
| 1988 | 11,655 | 749.70 | 8,741.25 | * | -- |
| 1989 | 6,096 | 412.26 | -- | -- | $4,572.00 |
| 1991 | 10,309 | 589.18 | -- | -- | 7,731.75 |
| 1992 | 30,987 | 1,351.52 | -- | -- | 23,240.25 |
| 1993 | 38,523 | 1,614.10 | -- | -- | 28,892.25 |
| 1994 | 18,572 | 963.71 | -- | -- | 13,929.00 |
| 1995 | 12,458 | 675.47 | -- | -- | 9,343.50 |
| 1996 | 26,862 | 1,429.74 | -- | -- | 20,146.50 |
| 1997 | 4,033 | 215.76 | -- | -- | 3,024.75 |

* 50 percent of the interest on the deficiency.

Respondent also determined additions to tax under section 6663 for 1987 and 1988 but has now conceded that those additions to tax are not due. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. The issues for decision are whether petitioner's underpayment of taxes and failure to file tax returns for the years in issue were due to fraud and whether a penalty should be awarded under section 6673 by reason of petitioner's groundless and frivolous positions maintained in this proceeding.

                         FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioner resided in New Smyrna Beach, Florida, at the time that he filed his petition.

Petitioner is a computer software engineer, specializing in software development, testing, and quality assurance. From 1975 through 1980, petitioner was employed by various companies in the computer field. He was employed as a test technician, field representative, engineering technician, test department manager and supervisor, and software engineer. He taught hardware and software courses for employees and customers of two companies.

Petitioner filed Federal income tax returns as a single individual for 1972 through 1975 and jointly with his wife for 1976, 1977, and 1979 through 1981. From 1987 through 1997, petitioner failed to file Federal income tax returns.

Petitioner did not maintain bank accounts in his name during the years in issue because he refused to provide his Social Security number to banking institutions. From 1987 through 1997, petitioner received compensation as an independent contractor in the field of software development and quality assurance. The checks that he received in payment for his services were cashed at the payers' banks or through bank accounts maintained by his wife, his mother, or his sister-in-law.

Petitioner received gross receipts from his occupation as follows:

| Year | Gross Receipts |
|------|----------------|
| 1987 | $41,011 |
| 1988 | 36,141 |
| 1989 | 22,866 |
| 1991 | 36,939 |
| 1992 | 101,159 |
| 1993 | 125,591 |
| 1994 | 64,118 |
| 1995 | 44,257 |
| 1996 | 84,656 |
| 1997 | 17,772 |

In addition, petitioner received minor amounts of interest income during these years.

During the years in issue, petitioner accumulated cars, boats, and motorcycles.  In 1996, petitioner and his wife purchased a home in Florida.  The deed was recorded in the name of petitioner's wife.

In 1991, the Internal Revenue Service (IRS) commenced an investigation of petitioner's Federal income tax liability for 1987 and 1988.  In a response to an administrative summons, petitioner and his wife wrote a letter to the IRS that asserted the following arguments:

> We must, first of all, inform you that we have no tax liability for the years in question.  We must, secondly, inform you that we possess a number of rights and that we claim all of our rights at all times.
>
> A question of jurisdiction arises in your claim against us for the liability of any income tax.  We are now, and were during the years in question, citizens of the State of New Hampshire.  We do not now, and did not during the years in question, work or reside in any territory which is, or was, under exclusive federal jurisdiction.  We are not now, and have never been,

operating under any privelege [sic] or engaging in any activity which generates revenue taxable income.

Any tax on our property, the fruits of our labor, must fall within the context of the apportionment clauses of the United States Constituion [sic].

Furthermore, whereas we possess other constitutionally protected rights, you lack any authority to require us to testify before you, to deliver to you any of our property or to provide you with any information.

We do not wish to voluntarily confer jurisdiction over us.

In a letter dated January 1, 1992, petitioner and his wife

asserted the following:

We are writing to inform you that the meeting arranged for us on January 3, 1992 is cancelled.

As stated in our previous letter to you, we have no tax liability to the United States or the Internal Revenue Service; perhaps you do not understand our status.  Furthermore, we have opened no accounts with respect to Title 26.

We remind you that you lack any authority to "summons" us or to "seize" any of our property (see Hale v. Henkel).

We have not voluntarily assesed [sic] ourselves (Flora v. U.S.) nor opened any accounts with you nor entered into any contractual agreement with you or the United States.

Our status is such that we are not subject to the provisions of Title 26.

Please provide proof of any such voluntary assesment [sic] or the existance [sic] of any "accounts" or that you have any proper jurisdiction over us before bothering us again.

Petitioner continued to maintain similar arguments through investigation of his liability for subsequent years, during a criminal case brought against him, through trial of this proceeding in February 2004, and in his posttrial brief. The criminal case that was commenced against petitioner was dismissed in 2001 when the presiding judge indicated that the matter should be pursued civilly rather than criminally.

In 1998, petitioner and his wife incorporated a business as Strategic Computer Solutions. The corporation had employees, including petitioner and his wife, and issued Forms W-2, Wage and Tax Statement, at the end of each year. Federal income taxes and Social Security taxes on the employees, including petitioner and his wife, were withheld, and the withheld taxes were paid to the IRS. Petitioner and his wife filed joint returns and reported their wages for 1998 and subsequent years.

OPINION

Petitioner has not raised any nonfrivolous arguments concerning the amount of deficiencies determined in the statutory notice. He has asserted various arguments concerning procedural matters and failures of the Government to prepare returns on his behalf and to assess promptly the amounts owing. He rejects the Court's explanation that assessment cannot occur until the decision in this case is final. See sec. 6213(a). He acknowledged during his testimony that he did not consult with

any tax professionals on the legality of his position on taxes in 1987 through 1997.  He cites numerous cases out of context, while ignoring those authorities contrary to his position.  He summarizes his position as follows:

> It is my understanding that I've never been made liable for a tax.  I don't understand how one is made liable for a tax, but I have never received an assessment for any of the years in question.  Up until the notice of deficiency, I've never received any indication that the Government is asking me to pay money; that the IRS is asking me to pay money.

Petitioner ignores the evidence concerning multiple notices to him that he had failed to file required returns and the investigation of his liability for 1987 and 1988 that commenced in 1991 and resulted in criminal prosecution.  Petitioner claims that he won the criminal case and therefore believes that he was correct.  He also claims that his beliefs were reinforced by the length of time that it took the IRS to proceed against him civilly.  As is usual, however, civil proceedings awaited the conclusion of the criminal matter.  See, e.g., Badaracco v. Commissioner, 464 U.S. 386, 399 (1984); Taylor v. Commissioner, 113 T.C. 206, 212 (1999), affd. 9 Fed. Appx. 700 (9th Cir. 2001).  The notices of deficiency followed promptly after dismissal of the criminal case.

Petitioner's arguments concerning liability are stale and have been uniformly rejected.  No further discussion of them is warranted.  See Lonsdale v. United States, 919 F.2d 1440 (10th

Cir. 1990); <u>United States v. Ward</u>, 833 F.2d 1538, 1539 (11th Cir. 1987); <u>Biermann v. Commissioner</u>, 769 F.2d 707 (11th Cir. 1985); <u>Waters v. Commissioner</u>, 764 F.2d 1389 (11th Cir. 1985); <u>Crain v. Commissioner</u>, 737 F.2d 1417 (5th Cir. 1984); <u>Knighten v. Commissioner</u>, 702 F.2d 59 (5th Cir. 1983); <u>Lonsdale v. Commissioner</u>, 661 F.2d 71, 72 (5th Cir. 1981), affg. T.C. Memo. 1981-122; <u>Reading v. Commissioner</u>, 70 T.C. 730 (1978), affd. 614 F.2d 159 (8th Cir. 1980).

In the criminal context, the Government was required to prove petitioner's guilt beyond a reasonable doubt. In this case, respondent must prove, by clear and convincing evidence, that petitioner had an underpayment of tax for 1987 and 1988 due to fraud (sec. 6653(b)) and that his failure to file tax returns for the other years in issue was fraudulent (sec. 6651(f)). Sec. 7454(a); Rule 142(b). Similar standards for proving fraud apply under either statute. See <u>Clayton v. Commissioner</u>, 102 T.C. 632, 653 (1994); <u>Niedringhaus v. Commissioner</u>, 99 T.C. 202, 211-213 (1992). Fraud may be proved by circumstantial evidence, and the taxpayer's entire course of conduct may establish the requisite fraudulent intent. <u>Rowlee v. Commissioner</u>, 80 T.C. 1111, 1123 (1983). Circumstantial evidence of fraud includes "badges of fraud" such as those present here: A longtime pattern of failure to file returns, failure to report substantial amounts of income, failure to cooperate with taxing authorities in determining the

taxpayer's correct liability, implausible or inconsistent explanations of behavior, concealment of assets, and failure to make estimated tax payments.  See, e.g., <u>Bradford v. Commissioner</u>, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601; <u>Powell v. Granquist</u>, 252 F.2d 56, 60 (9th Cir. 1958); <u>Grosshandler v. Commissioner</u>, 75 T.C. 1, 20 (1980); <u>Gajewski v. Commissioner</u>, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978).

Petitioner stipulated to the payments received from 1988 through 1997.  He admitted during his testimony that he received funds for work performed during each of the years in issue.  Proof of gross receipts is sufficient to satisfy respondent's burden of showing an underpayment for 1987 and 1988 in the absence of evidence of offsetting deductions.  See, e.g., <u>Greenwood v. Commissioner</u>, T.C. Memo. 1990-362.  Petitioner has neither argued nor shown that he had any offsetting deductions not allowed in respondent's determination.

In defending the charge of fraud, petitioner attempts to rely on his letters openly stating his position to the IRS.  Those letters, however, commenced only after his failure to comply with his obligations had been discovered.  They are not persuasive evidence negating fraud.  See <u>Rowlee v. Commissioner</u>, <u>supra</u> at 1124.

Respondent cites petitioner's resumption of filing returns for 1998 and later years, after the investigation of him had commenced, as evidence that petitioner was well aware of his Federal tax obligations. Petitioner argues that he filed returns for 1998 and subsequent years because different laws apply to corporations. It appears, however, that petitioner continued to receive compensation for services that he personally performed and reported that compensation on his tax returns for 1998 and subsequent years. Notwithstanding his attempt to justify his prior delinquencies, we believe that petitioner was knowledgeable about his tax-paying responsibilities but "'consciously decided to unilaterally opt out of our system of taxation'" until the IRS commenced its investigation of him. Niedringhaus v. Commissioner, supra at 212-213 (quoting Miller v. Commissioner, 94 T.C. 316, 335 (1990)).

We are convinced that petitioner's refusal to file tax returns was willful and with knowledge that he was obligated to file them and pay tax on his income. His sudden "discovery" of his frivolous positions after many years of apparent compliance, his failure to consult any professionals or authorities on the subject, and his refusal to acknowledge his errors through the time of trial of this case undermine his claims of good-faith belief. Similar evidence has been held sufficient to support a criminal conviction in other cases. See, e.g., United States v.

Sloan, 939 F.2d 499 (7th Cir. 1991); United States v. Collins, 920 F.2d 619 (10th Cir. 1990); United States v. Ward, supra; United States v. Schiff, 801 F.2d 108 (2d Cir. 1986); United States v. Karlin, 785 F.2d 90 (3d Cir. 1986); United States v. Bressler, 772 F.2d 287 (7th Cir. 1985); United States v. Romero, 640 F.2d 1014 (9th Cir. 1981); United States v. Buras, 633 F.2d 1356 (9th Cir. 1980).

When, as here, accompanied by evidence of intent to conceal income and assets, the longtime pattern of failing to file tax returns is sufficient to sustain the civil penalties. See, e.g., Niedringhaus v. Commissioner, supra at 212-213; Rowlee v. Commissioner, supra; Marsh v. Commissioner, T.C. Memo. 2000-11, affd. 23 Fed. Appx. 874 (9th Cir. 2002); Houser v. Commissioner, T.C. Memo. 2000-111; Harrell v. Commissioner, T.C. Memo. 1998-207, affd. without published opinion 191 F.3d 456 (7th Cir. 1999); Dunham v. Commissioner, T.C. Memo. 1998-52. The penalties for fraud in this case will be sustained.

As indicated above, our conclusion that petitioner's underpayment of taxes and failure to file returns was due to fraud is based on the objective facts and rejection of his claims of good faith. Our reasoning is supported in part by his refusal to acknowledge that his positions are contrary to law, as he was advised by the IRS, relevant authorities, and the Court in this case. Petitioner persists in his frivolous and groundless

arguments through his posttrial brief. Apparently petitioner expects that, if he feigns sincere belief, he will avoid penalties. Petitioner is obviously intelligent and articulate, but he has persevered too long to have any credibility. Serious sanctions are necessary to deter him and others similarly situated. Under these circumstances, section 6673 provides in relevant part:

> SEC. 6673(a). Tax Court Proceedings.--
>
> (1) Procedures instituted primarily for delay, etc.--Whenever it appears to the Tax Court that--
>
> (A) proceedings before it have been instituted or maintained by the taxpayer primarily for delay,
>
> (B) the taxpayer's position in such proceeding is frivolous or groundless, or
>
> (C) the taxpayer unreasonably failed to pursue available administrative remedies,
>
> the Tax Court, in its decision, may require the taxpayer to pay to the United States a penalty not in excess of $25,000.

Petitioner was specifically warned by respondent and by the Court of the likelihood of a penalty under section 6673 if he persisted in his frivolous arguments, and he has persisted. He did so even when the Court ordered briefs limited to the question of fraud. See Granado v. Commissioner, 792 F.2d 91, 94 (7th Cir. 1986), affg. T.C. Memo. 1985-237. A penalty will be awarded to the United States in the amount of $20,000.

To reflect the foregoing,

<u>An appropriate order and decision will be entered for respondent.</u>